WILLIAM H. BROWN, PLAINTIFF IN ERROR, v. JOHN HONNISS ET AL., DEFENDANTS IN ERROR.

Argued November 27, 1903—Decided May 24, 1904.

A. obtained from B. an option to purchase certain real estate.  A. exercised his option and demanded a deed tendering the amount of purchase-money agreed upon.  B. refused to make conveyance because of the purpose to which it was intended to devote the property.  *Held*—
1. That this was an inadequate reason for B.'s refusal and that A. was entitled to recover the value of his bargain.
2. That the facts that B. was a married man at the time when the option was given, and when the deed was demanded and the consideration money tendered, and that B.'s wife had not joined in the option, did not excuse B. from making the conveyance, he basing his refusal to convey on another and inadequate reason.

---

On error to the Essex Circuit Court.

For the plaintiff in error, *Pitney & Hardin.*

For the defendants in error, *Coult, Howell & Ten Eyck.*

The opinion of the court was delivered by

GARRETSON, J.  The plaintiff, on payment of $25, obtained from the defendants a written option to purchase a tract of

land for a certain price and, before the expiration of the option, demanded a conveyance of the land, tendering the amount which he had agreed to pay for it.

Prior to the exercise of the option the plaintiff had sold the land to the city of Newark for an isolation hospital at an advance of $5,000 upon the price he had agreed to pay for the same to the defendants; the defendants, upon learning this, refused to make conveyance, giving as a reason for the refusal that the property was to be used for an isolation hospital.

. Upon the trial of the cause the defendant Honniss gave the following testimony:

"*Q.* You are a married man?

"*A.* Yes, sir.

"*Q.* And were at the time you executed this option?

"*A.* Yes, sir.

"*Q.* And your wife was living with you at the house at the time?

"*A.* Yes, sir.

"*Q.* And your wife is still living?

"*A.* Yes, sir.

"*Q.* Mr. Honniss, how old are you?

"*A.* I believe I was seventy-eight years old yesterday.

"*Q.* How old is Mrs. Honniss?

"*A.* Well, she is five years younger, I believe. ·

"*Q.* Seventy-three?

"*A.* Yes."

Upon this evidence alone, the court, relying upon and applying *Gerbert* v. *Trustees, 30 Vroom* 160, which decided that in an action on contract for breach of covenant to convey real estate with warranty of title when the vendor's title is defective nominal damages only can be recovered, held that the defendant Honniss was excused from carrying out the option to convey, because of inability to make title by reason of the inchoate right of dower of his wife, and directed a verdict for the amount which the plaintiff had paid for the option.

It is this direction which the plaintiff alleges for error.

The defendant Honniss at no time alleged or claimed that the reason for not making the conveyance was that his wife was unwilling to release her dower in the premises, or gave that as a reason for not carrying out his contract; there is nothing in the case to show that his wife ever refused to join in a deed for the premises, or, if requested, would not have joined in a conveyance; he testified on the trial that the plaintiff could then buy it for a factory at the same price. The only reference throughout the whole transaction to the wife's right of dower is the testimony above stated, given at the trial. And the defendant did not then give that as a reason for not making the conveyance but gave an entirely different and inadequate reason. Upon the trial of the cause the plaintiff testified that the defendant Honniss told him he was in an embarrassing position; that Mr. Tiffany, for whom he did a great deal of business, did not want him to give the deed; that this matter placed him in an embarrassing position, because Mr. Tiffany, for whom he did a great deal of work, didn't want him to let us have the property for the purpose of an isolation hospital; that he kept saying that he could not do it on account of Mr. Tiffany; that he did a great deal of business with Mr. Tiffany, and he didn't want the thing done; that he had no objection himself; that Mr. Tiffany didn't want him to give a deed; that he didn't care about the other people, but he did care about Mr. Tiffany; that he couldn't give the deed on that account—on account of Mr. Tiffany; that that seemed to be the only objection that he had to giving up the deed.

The defendant Honniss testified as follows:

"Q. Where did you first hear that the property was to be used as an isolation hospital?

"A. I saw it in a paper.

"Q. That was the first you knew of it?

"A. Yes, sir; and I was dumfounded to think that it was to be used for a hospital.

"Q. And up to that time you would have been perfectly willing to convey it?

"*A.* Yes, sir; Mr. Brown could buy it up to that time for a factory, and he can buy it to-day for a factory for the same price.

"*Q.* And the reason you did not make the deed was because you learned that the property was to go to the city for an isolation hospital?

"*A.* Yes, sir."

The defendants' counsel, to whom the plaintiff was referred by the defendant, also testified that he told the plaintiff that the reason the defendant Honniss would not convey the property to the plaintiff was because it was to be used for the purpose of an isolation hospital.

The facts of the case, as above stated, show clearly that it is not within that of *Gerbert* v. *Trustees, supra.* In that case, on the 1st of March, 1884, one Snyder entered into a lease with the trustees of the congregation of the Sons of Abraham for certain premises for the period of five years from April 1st, 1884. The lease contained a stipulation for a further term of five years, provided notice should be given three months before the expiration of the said term. On October 12th, 1888, notice was given by the lessee that a further term was desired; no new lease was actually executed, but the trustees continued in possession of the property after the expiration of the first term of five years. Snyder died in April, 1892. Peter Gerbert was appointed his executor. After the death of Snyder a demand was made for a conveyance of the property pursuant to the following provision contained in the lease:

"And further that if the said party of the second part shall desire to purchase the demised premises that he (the lessor) will, at any time during the tenancy hereby created or agreed upon, for the consideration of seven thousand dollars, sell and convey, by warranty deed, with the usual full covenants, free and clear of all encumbrances, the demised premises to the said party of the second part or such person or persons as they shall desire, upon their giving to him, his heirs, executors or administrators notice that they desire such conveyance, such conveyance to be made within thirty days after the giving of such notice and the payment of rent to cease at

the delivery of such deed, and if not delivered within the said thirty days then said rent to cease at the end of that time."

Gerbert was unable to make this conveyance because Snyder had only a life estate in the property covered by the lease—an estate by curtesy—the title to the property being in his wife, deceased at the time of making the lease.   Here there was an absolute inability in the seller or his executor to convey by reason of total failure of title in them.   In the case *sub judice,* there is no allegation of any disability in the seller to convey but a refusal to convey for a totally inadequate reason, and in such case the plaintiff is entitled to recover for the loss of his bargain.     *Engel* v. *Fitch, L. R.,* 8 *Q. B.* 659.

The judgment will be reversed and a *venire de novo* awarded.

*For affirmance*—None.

*For reversal*—THE CHIEF JUSTICE, DIXON, GARRISON, FORT, GARRETSON, HENDRICKSON, PITNEY, BOGERT, VREDEN-BURGH, VROOM, GRAY.   11.